IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**SARAH JANE BEAUGEZ**                                                             **PLAINTIFF**

**VERSUS**                                          **CIVIL ACTION NO.** 3:14cv170-MPM-JMV

**THERAPY MANAGEMENT CORPORATION**
**and TRISTAR REHAB, INC.,**                                   **DEFENDANTS**

                                                              **JURY TRIAL DEMANDED**

## COMPLAINT

This is an action to recover actual and punitive damages for discharge in violation of public policy. Plaintiff shows the Court the following facts:

1.

Plaintiff, SARAH JANE BEAUGEZ, is an adult resident citizen of 1306 Bowen Avenue, Ocean Springs, Mississippi 39564.

2.

Defendant THERAPY MANAGEMENT CORPORATION ("TMC") is a Florida corporation doing business in the State of Mississippi, which may be served with process upon its registered agent, Business Filings International, Inc., 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232. Defendant is a citizen of states other than Mississippi and not of Mississippi, and by certified mail, return receipt requested to its address at 8477 South Suncoast Boulevard, Homosassa, Florida 34446.

Defendant, TRISTAR REHAB, INC. ("Tristar") is a Florida corporation doing business in the State of Mississippi, which may be served with process upon its registered agent, C T Corporation System, 645 Lakeland East Dr., Suite 101, Flowood, Mississippi 39232. Defendant is a citizen of states other than Mississippi and not of Mississippi, and by certified mail, return receipt requested to its address at 8477 South Suncoast Boulevard, Homosassa, Florida 34446.

3.

Because the Plaintiff and Defendants are citizens of different states, this Court has diversity jurisdiction under 28 U.S.C.A. § 1332. Because this case depends upon an interpretation of the laws of the United States, and the case necessarily raises a federal issue, the Court has federal question jurisdiction under 28 U.S.C.A. § 1331.

4.

Defendants were Plaintiff's co-employers. Alternatively, if Defendants were not Plaintiff's co-employers, then Therapy Management Corporation is the owner and controller of Tristar Rehab, Inc., and is responsible for the unlawful policies adopted by Defendants for making medicare claims. Defendants submit their bills to Medicare through another entity they control known as NorthStar Rehab of Mississippi, LLC.

5.

Defendants are engaged in the business of providing rehabilitation services for persons with physical disabilities.

6.

Therapists are legally required to be licensed, possess the expertise to examine patients, and determine the extent of functional limitations.

7.

The primary source of Defendants' income is payments from the United States Government through Medicare. In order to make these payments, the United States must be actively informed of the patients' physical limitations in order to know the need, if any, of service, and the length of time for which services are needed.

8.

Beginning with the Middle Class Tax Relief Act of 2012, Centers for Medicare & Medicaid Services (CMS) requires healthcare providers, including, but not limited to, physical therapists (PT), occupational therapists (OT), and speech therapists (ST) working for agencies contracted to skilled nursing facilities, to collect information that generates billing for Medicare Part B services. Effective July 1, 2013, all healthcare providers are mandated to report to CMS, using G-Codes and severity modifiers. G-Codes and severity modifiers define functional limitations of patients to receive services.

9.

G-Codes and severity modifiers must be included with billing in order for Medicare to pay claims submitted by providers. If the G-Codes and severity modifiers are inaccurate, Medicare will over pay or under pay for services rendered by the healthcare provider. CMS mandates G-Codes and severity modifiers are to be accurately reported at the time of the initial evaluation, every tenth visit and upon discharge.

10.

Federal regulations require that accurate G-Codes and severity modifiers be determined and reported by therapists who evaluate the patient. It is impossible for a corporate entity or anyone who

is not a licensed therapist to generate accurate G-Codes and severity modifiers. Defendants, who also serve as the contract agency, however, do not permit therapists to determine the G-Codes and severity modifiers. Instead, therapists input raw data regarding patient status within the electronic documentation system owned and operated by Defendants who, in turn, internally generate G-Codes and severity modifiers for transmission to Medicare.

11.

On approximately May 12, 2014, while Plaintiff was working as a physical therapist for Defendants in Union County, in the Northern District of Mississippi, Plaintiff learned that the information which she was transmitting to Defendants concerning patients' physical limitations did not correspond with the G-codes and severity modifiers being transferred to Medicare for billing and reimbursement. Specifically, the percentages of functional limitations deficit, represented by the severity modifier transmitted to Medicare under Plaintiff's National Provider Identification Number did not reflect the physical limitations of the patients.

12.

Plaintiff questioned Defendants' IT Department about the discrepancy between raw data and assigned G-Codes and severity modifiers submitted to Medicare for reimbursement by Defendants. Plaintiff was informed that G-codes and severity modifiers were generated through internal statistical analysis. Defendants then informed Plaintiff that "it was not the right of a therapist to know how the G-Codes and severity modifiers were generated and transmitted." This caused Plaintiff grave concern, since her NIP number (her personal identity) had been attached to the G-Codes and severity modifiers, along with the notation reported to be "in her professional opinion." Defendants indicated to the United States Government that a licensed physical therapist had

evaluated the patient, had actually recorded the G-Codes and severity modifiers, which was a false representation.

13.

Plaintiff asked senior management about the discrepancy between raw data inputted by the therapist and her assessment as to the percentage of functional limitation reflected in the severity modifier, and the percentage statistically generated severity modifiers submitted to Medicare for reimbursement. Plaintiff expressed concern to senior management, specifically related to severity modifiers, stating the "percentage of functional limitation as recorded on the document submitted to Medicare for reimbursement was not consistent with raw data used to develop the patient's Plan of Care." That member of senior management expressed a lack of awareness in regard to the discrepancy. Senior management informed Plaintiff that a follow-up on the questions raised by Plaintiff would be addressed in short order.

Approximately ten (10) days later, with no warning, Defendants' HR representative and Plaintiff's regional manager called and informed Plaintiff that she was terminated, effective immediately, with no severance, no reference and with the charge to not "bother to file for unemployment" because there was no cause for termination, except that Plaintiff was "not a good fit for the rehab department."

14.

There were no record of any problems with Plaintiff's work performance. Plaintiff was terminated because she had reported illegal activity of Defendants. The laws of the United States require that therapists provide G-Codes and severity modifiers to Medicare in order for Defendants to receive the type payments in question for each case. Defendants ignored the data actually

-5-

observed and recorded by Plaintiff and other therapists. Instead, Defendants arbitrarily created G-Codes and severity modifiers to maximize payments from Medicare. To honestly obtain payments from Medicare, the G-Code ratings could only be assigned by qualified therapists who had examined the patients. The disallowance of therapists assigning G-Codes and severity modifiers being transmitted to Medicare means that taxpayer monies are paid to Defendants which are not owed.

15.

Defendants' corporate policies regarding the internal statistically-generated G-Codes and severity modifiers disregard the mandate by CMS that G-Codes and severity modifiers be chosen by the therapist. The documentation with billing information submitted to Medicare by Defendants represent a disregard of the legal requirement that therapists be allowed to choose the G-Codes and severity modifiers. This results in payment of Medicare payments to Defendants which are not owed.

16.

Defendants assigning G-Codes and severity modifiers, instead of utilizing the data gathered by the examining licensed therapists, represents Medicare fraud in violation of the criminal laws of the United States, and represents receiving money under false pretenses in violation of the criminal laws of the state of Mississippi.

17.

Defendants discharged Plaintiff in violation of Mississippi public policy.

18.

Plaintiff has suffered lost income and mental anxiety and stress as a result of Defendants' actions.

## REQUEST FOR RELIEF

Plaintiff requests actual and punitive damages against Defendants in an amount to be determined by a jury, and reasonable attorney's fees, costs and expenses.

This, the 29th day of July, 2014.

                    Respectfully submitted,

                    WAIDE & ASSOCIATES, P.A.

                    BY: */s/ JIM WAIDE*
                        JIM WAIDE
                        MS BAR NO.: 6857

WAIDE & ASSOCIATES, P.A.
ATTORNEYS AT LAW
POST OFFICE BOX 1357
TUPELO, MISSISSIPPI 38802-1357
TELEPHONE: 662/842-7324
FACSIMILE: 662/842-8056
EMAIL: WAIDE@WAIDELAW.COM

ATTORNEYS FOR PLAINTIFF